1  Bradley Schrager, Esq.
   Nevada State Bar No. 10217
2  Daniel Bravo, Esq.
   Nevada State Bar No. 13078
3  WOLF, RIFKIN, SHAPIRO,
   SCHULMAN & RABKIN, LLP
4  3556 E. Russell Road, 2nd Floor
   Las Vegas, Nevada 89120-2234
5  Telephone: (702) 341-5200/Fax: (702) 341-5300
6  Email: bschrager@wrslawyers.com

7  *Attorney for Defendant Anastasia Popova*

8

9              **UNITED STATES DISTRICT COURT**

10                  **DISTRICT OF NEVADA**

11

12  ILIA N. ZAVIALOV, in the right of and for       Case No: 2:13-cv-02090-JAD-VCF
    the benefit of DREAM MARRIAGE GROUP,
13  INC.,

14         Plaintiff,

15         vs.

16
    ANASTASIA POPOVA, DOES 1 through
17  50, Inclusive,

18         Defendants,

19   -and-

20  DREAM MARRIAGE GROUP, INC.,

21
           Nominal Party.
22

23

24      **DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
    **TO STAY ON GROUNDS OF ABSTENTION, OR, IN FURTHER ALTERNATIVE, TO**
25      **TRANSFER ON GROUNDS OF *FORUM NON CONVENIENS***

26

27      Defendant Anastasia Popova (hereinafter "Defendant"), by and through her attorneys,

28  Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, respectfully submits her motion to dismiss or, in

the alternative, to stay this matter on abstention grounds, or, as further alternative, to transfer on grounds of *forum non conveniens* Plaintiff's Verified Complaint, pursuant to Fed. R. Civ. P. 12(b)(1).

This motion is based upon the attached memorandum of points and authorities, all papers and exhibits on file herein, together with such other and further evidence and oral argument as may be presented and considered by this Court at any hearing of this Motion.

DATED this 5th day of December, 2013.

**WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**

By:    */s/ Bradley Schrager, Esq.*
Bradley Schrager, Esq.
Nevada State Bar No. 10217
Daniel Bravo, Esq.
Nevada State Bar No. 13078
WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120-2234

*Attorney for Defendant Anastasia Popova*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

The present case is only one small installment in a series of desperate attempts by Plaintiff Ilia N. Zavialov ("Plaintiff") to thwart proceedings in a different jurisdiction—the state courts of California—that has already confirmed its authority and jurisdiction over the subject matter. Plaintiff is creating the real and imminent threat of piecemeal litigation and inconsistent adjudications between various state and federal forums, while imposing upon Defendant needless and duplicative expenses associated with defending parallel actions in multiple fora. Plaintiff has deliberately engaged in forum shopping in pursuing the instant action alongside parallel state and federal actions in multiple forums in three states.

1    Plaintiff should not be permitted to manipulate the judicial process and force the likelihood

2    of contradictory and improper results upon this Court. Accordingly, the Court should dismiss or,

3    alternatively, stay this action on abstention grounds pending the outcome of Defendant Anastasia

4    Popova's California state court dissolution of marriage action. Otherwise, this matter should be

5    dismissed on *forum non conveniens* grounds or transferred to the United States District Court for

6    the Central District of California for reasons laid out below.

7    **II.    BACKGROUND**

8    Plaintiff and Defendant are each 50% co-owners of Dream Marriage Group, Inc. (the

9    "Company"), an international online dating service. It is undisputed that the business was

10   conceived and put into operation as a general partnership after the parties' 2003 marriage. It was

11   later incorporated on November 29, 2006, as a domestic for-profit Nevada corporation. Dream

12   Marriage Group, Inc. is unquestionably community property within the marriage and under the

13   jurisdiction of the California family law court, as both husband and wife own equal shares of the

14   enterprise, have actively participated in the operation of the company, and are in the midst of a

15   marriage dissolution action in California that predates the present case by more than a month. *See*

16   Exhibit 1, in the simultaneously filed Request for Judicial Notice (hereinafter "RJN").

17   On September 6, 2013, Defendant filed a marital dissolution action in the Superior Court

18   of Los Angeles County, California ("the California Family Law Action"). *See* RJN Exhibit 2. In

19   that matter, the California family law court will determine the proper disposition of the couple's

20   community property, including their respective interests in the Company.

21   On September 15, 2013, Defendant filed a motion for control of the Company in the

22   California Family Law Action asserting that she had recently discovered that Plaintiff had been

23   misappropriating Company funds for personal, non-community, expenses, such as supporting two

24   mistresses and two children by his mistresses. *See* RJN Exhibit 3 at 1-2. Defendant contended that

25   Plaintiff has been stripping the Company for his personal use, in contravention of his fiduciary

26   duties. *See* RJN Exhibit 3 at 1-2. Defendant seeks, by her pending motion for control of the

27   Company set for hearing on January 14, 2014 in California family court, to prevent such activities

28   in the future, and to limit Plaintiff's access to Company funds. Defendant also demands

1    reimbursement to the community and/or the Company of all funds taken by Plaintiff for which he

2    cannot establish a legitimate business purpose. *See* RJN Exhibit 3 at 3-4.

3        Plaintiff, in retaliation, then commenced this action ("the Nevada Action") a month later,

4    on October 15, 2013, filing a shareholder derivative action in the Eighth Judicial District against

5    Defendant, seeking injunctive relief, the appointment of a receiver, and damages. *See* RJN Exhibit

6    1. Therein, Plaintiff contends that Defendant has inappropriately taken control of various

7    Company accounts—making, in essence, counterclaims to the allegations made in the already-

8    pending California Family Law Action, but styling them as a shareholder derivative suit in Nevada

9    for purposes of multiplying the litigation between the parties. *See* RJN Exhibit 1 at 6-8.

10        Not content to have brought all of the issues that will be decided in the family law case

11    into a civil court in the Nevada Action, the very next day, on October 16, 2013, Dream Marriage,

12    Inc., at the Plaintiff's direction (although he had claimed in the Nevada Action he had no power,

13    authority, or ability to bring suit or act on behalf of the Company), filed an almost identical action

14    as this action in the United States District Court for the Central District of California (the

15    "California Federal Action"). *See* RJN Exhibit 4. On November 22, 2013, that case was

16    voluntarily dismissed, without prejudice.

17        On October 18, 2013, Plaintiff then filed his own, competing marital dissolution action in

18    the Superior Court of Clark County, Washington ("the Washington Action"), when he had already

19    been served to appear in the California Family Law Action. *See* RJN Exhibit 5. At or near the

20    same time, Plaintiff filed a motion to quash Defendant's petition for dissolution in the California

21    Family Law Action, which was subsequently denied, the California court expressly confirming its

22    jurisdiction. *See* RJN Exhibit 6 at 4-5. Further, the Washington court pointedly refused to entertain

23    Plaintiff's Washington petition for dissolution, rightly deferring to the California Family Law

24    Action. *See* **Exhibit A**, Declaration of Zachary J. Fruchtengarten, Esq., Defendant's Washington

25    counsel, attached hereto.

26        Within 72 hours in mid-October, therefore, in what can only be described as a neurotic

27    escalation of litigation activity, Plaintiff had filed three separate actions in three separate

28    jurisdictions asserting largely the same claims in all three, even while contradicting his own

1 allegations at every respective turn. Plaintiff's multiple filings, and inconsistencies within those
2 filings, show an intense desperation to prevent proper proceedings in the family law court in
3 California.[1]

4       On November 12, 2013, Defendant properly removed the Nevada Action to the United
5 States District Court for the District of Nevada. *See* RJN Exhibit 7.

6 **III.   ARGUMENT**

7     **A.   Legal Standard**

8       A motion to dismiss based on the abstention doctrine is also considered as a motion to
9 dismiss for lack of subject matter jurisdiction. *See City of New York v. Milhelm Attea & Bros.,*
10 *Inc.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008); *Dostert v. Neely*, 498 F. Supp. 1144, 1146
11 (S.D.W. Va. 1980).

12       Subject matter jurisdiction is an essential element to every lawsuit and must be
13 demonstrated "at the successive stages of the litigation." *Chapman v. Pier 1 Imports (U.S.), Inc.,*
14 631 F.3d 939, 954 (9th Cir. 2011) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.
15 Ct. 2130 (1992)). The existence of subject matter jurisdiction is an ongoing inquiry that a court
16 must conduct sua sponte in order to continue the case. *Chapman*, 631 F.3d at 954; *Bernhardt v.*
17 *County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002). Where subject matter jurisdiction is
18 absent, a court has no discretion and must dismiss the case. *Chapman*, 631 F.3d at 954.

19       Pursuant to Fed. R. Civ. P. 12(b)(1), a challenge to the court's jurisdiction may be facial or
20 factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a
21 factual attack on jurisdiction, the district court may review evidence beyond the complaint without
22 converting the motion to dismiss into a motion for summary judgment. *Id.*; *see also Terenkian v.*

23 --------------------------------

24    [1] Plaintiff's inconsistencies are shown in Plaintiff's Verified Complaint in this action,
wherein he alleges Defendant is a California resident; however, in Plaintiff's Petition for
25 Dissolution of Marriage, filed three days later, in the Washington Action, he alleges Defendant is a
Washington resident. *See RJN* Exhibit 1, 5. Furthermore, the inherent inconsistency of filing a
26 derivative action in the Nevada Action, and the very next day, having Dream Marriage, Inc., at the
27 Plaintiff's direction, file an almost identical action shows Plaintiff's dubious use of the legal
system. *See* RJN Exhibit 1, 4.

28

1  *Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) ("the defendant may introduce testimony,

2  affidavits, or other evidence to 'dispute[ ] the truth of the allegations that, by themselves, would

3  otherwise invoke federal jurisdiction'"). Furthermore, "no presumptive truthfulness attaches to

4  plaintiff's allegations." *Terenkian*, 694 F.3d at 1131. If the factual basis for jurisdiction is

5  challenged, the evidence must be weighed by the court and the plaintiff bears the burden of

6  proving jurisdiction exists. *Safe Air for Everyone*, 373 F.3d at 1039. Because Defendant is

7  submitting additional facts and declarations regarding pending state court proceedings, the

8  challenge to subject matter jurisdiction is factual. Thus, Plaintiff bears the burden of proving this

9  Court has subject matter jurisdiction. *Id*.

10        **B.     This Court Should Dismiss or Stay this Lawsuit on Abstention Grounds**

11        Ordinarily, "the pendency of an action in the state court is no bar to proceedings

12  concerning the same matter in the Federal court having jurisdiction." *Exxon Mobil Corp. v. Saudi*

13  *Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517 (2005) (*quoting McClellan v. Carland*, 217

14  U.S. 268, 282, 30 S. Ct. 501 (1910)). However, "[c]omity or abstention doctrines may, in various

15  circumstances, permit or require the federal court to stay or dismiss the federal action in favor of

16  the state-court litigation." *Id*.

17        Federal courts may abstain from exercising jurisdiction in exceptional circumstances of

18  parallel, duplicative litigation in the interests of sound judicial administration and economy.

19  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236

20  (1976). In *Colorado River*, the Supreme Court held that where there are substantially similar,

21  parallel actions in both federal and state court, a district court may abstain from entertaining the

22  federal suit when considerations of "wise judicial administration, giving regard to conservation of

23  judicial resources and comprehensive disposition of litigation" so dictate. *Id*. The Supreme Court

24  based its holding on balancing, inter alia, (1) whether the state court first assumed jurisdiction over

25  a property, if any; (2) the inconvenience of the federal forum; (3) the desirability of avoiding

26  piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5)

27  whether federal law or state law provides the rule of decision on the merits; (6) whether the state

28  proceedings are adequate to protect the federal litigant's rights; (7) whether exercising jurisdiction

1  would promote forum shopping; and (8) whether the two actions are substantially similar. *Id.*, 424

2  U.S. at 818-819; *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 103

3  S. Ct. 927, (1983).

4        The *Colorado River* abstention doctrine is not subject to precise rules, but rather should

5  "be applied in a pragmatic, flexible manner with a view to the realities at hand," taking into

6  account "both the obligation to exercise jurisdiction and the combination of factors counseling

7  against that exercise." *Moses H. Cone*, 460 U.S. at 22. "The weight to be given to any one factor

8  may vary greatly from case to case, depending on the particular setting of the case." *Moses H.*

9  *Cone*, 460 U.S. at 16. Here, every single *Colorado River* factor bodes in favor of abstention. The

10  following *Colorado River* factors, grouped together for brevity and convenience of the Court,

11  overwhelmingly support abstention in this case.

12        **1.    State-Law Issues Predominate Over Federal Questions in This Action**

13        Taking into account the relevant facts of the Nevada Action and the California Family Law

14  Action, the most significant *Colorado River* abstention factor is whether and to what extent federal

15  law provides the rules of decision on the merits. *Moses H. Cone*, 460 U.S. at 16. Given the family

16  law court's broad jurisdictional authority in the California Family Law Action, where the right to

17  and disposition of community property, such as the parties' shares and interests in the company,

18  are concerned, strong public policy suggests that state-law issues predominate over the set of facts

19  in the Nevada Action. The proceedings in the family law court in California are adequate to

20  protect the rights of both parties.

21        The action commenced here by Plaintiff is substantially similar and duplicative of the

22  issues that will be resolved by the court in the California Family Law Action, including claims of

23  reimbursement or improper handling of the community property company's monies and assets.

24  Federal courts traditionally refuse jurisdiction over marriages and divorces. *Sanders v. Robinson*,

25  864 F.2d 630, 633 (9th Cir. 1988). This Court shall be inconvenienced if it has to decide on family

26  law issues that will be resolved properly in the California Family Law Action. Therefore, the

27  California family law court is better suited to determine the issues presented here.

28  / / /

1       **2.**     **This Action Poses a Serious Threat of Inconsistent Adjudication**

2       Maintaining the Nevada Action would present a danger of piecemeal and inconsistent

3 adjudication between the California Family Law Action and the Nevada Action. *Colorado River*,

4 424 U.S. at 818. In identifying the desirability of avoiding piecemeal litigation as a pertinent

5 factor in *Colorado River*, the Supreme Court cited *Brillhart v. Excess Ins. Co. of America*, 316

6 U.S. 491, 62 S. Ct. 1173 (1942):

7       Gratuitous interference with the orderly and comprehensive disposition of a state
      court litigation should be avoided. Where a district court is presented with a claim
8       such as was made here, it should ascertain whether the questions in controversy
      between the parties to the federal suit, and which are not foreclosed under the
9       applicable substantive law, can better be settled in the proceeding pending in the
      state court. This may entail inquiry into the scope of the pending state court
10       proceeding and the nature of defenses open there. The federal court may have to
11       consider whether the claims of all parties in interest can satisfactorily be
      adjudicated in that proceeding, whether necessary parties have been joined, whether
12       such parties are amenable to process in that proceeding, etc.

13

14 *Colorado River*, 424 U.S. at 818 (*citing Brillhart*, 316 U.S. at 495). Under these standards, it is

15 clear that the issues raised in this lawsuit can be better settled by the court in the California Family

16 Law Action. *See Glade v. Glade*, 38 Cal. App. 4th 1441, 45 Cal. Rptr. 2d 695 (Cal. App. 2d Dist.

17 1995) (where the court abstained because that there was a threat of multiple actions and

18 inconsistent verdicts which could undermine the family law court's ability to characterize and

19 dispose of parties' community property); *accord Askew v. Askew*, 22 Cal. App. 4th 942, 961, 28

20 Cal. Rptr. 2d 284 (Cal. App. 4th Dist. 1994) ("After a family law court acquires jurisdiction to

21 divide community property in a dissolution action, no other department of a superior court may

22 make an order adversely affecting that division.").

23       The court in the California Family Law Action will resolve all said claims, and any

24 decision here poses a real threat of inconsistent adjudications between state and federal forums, a

25 thicket that will have to be untangled at great cost at a later time. The issues herein, guised as a

26 derivative suit in the present action, are the province of the California Family Law Action. There

27 are no other shareholders of the Company, so Plaintiff's "shareholder derivative" model is flawed

28 and disingenuous in the first instance, and all the subject matter is community property subject to

1 | the California court's jurisdiction.

2 |         **3.**     **The Superior Court of Los Angeles County, California Obtained**
3 |                 **Jurisdiction Prior to This Court**

4 |       The chronological order in which jurisdiction was obtained over the present subject matter

5 | also supports abstention in this case. *Colorado River*, 424 U.S. at 818. The questions of "priority

6 | should not be measured exclusively by which complaint was filed first, but rather in terms of how

7 | much progress has been made in the [respective] actions." *Moses H. Cone*, 460 U.S. at 21.

8 |       The court in the California Family Law Action confirmed that the *res* of the marriage is in

9 | the state of California, and first assumed jurisdiction over the property.  Further, not only was the

10 | California Family Law Action filed a month prior to the Nevada Action, there has been more

11 | progress in the California Family Law Action than here. This present motion is the only issue

12 | pending in the Nevada Action. The California family law court has already denied Plaintiff's

13 | motion to quash Defendant's petition for dissolution, thereby confirming the family law court's

14 | jurisdiction, and has set a January 14, 2014, hearing for Defendant's motion for control of the

15 | company. Therefore, this factor also favors abstention.

16 |         **4.**     **Plaintiffs Filed This Lawsuit in Reaction to the State Court Action**

17 |       The vexatious and reactive nature of the Nevada Action heavily supports abstention in this

18 | case. *Moses H. Cone*, 460 U.S. at 17, n. 20. Plaintiff's dubious use of the legal system by

19 | commencing duplicative and meritless actions, which one forum has already abstained from

20 | hearing, further favors abstention. Plaintiff filed two separate civil actions duplicative of the

21 | California Family Law Action, and he also filed a separate Washington divorce action, which

22 | repeats the matters at issue in California. Plaintiff deliberately engaged in forum shopping by

23 | bringing this instant action and parallel state and federal actions in an effort to drain Defendant's

24 | financial assets. Therefore, this factor also favors abstention.

25 |       In conclusion, the foregoing *Colorado River* abstention factors weigh in favor of this Court

26 | either dismissing or staying the present matter.

27 | / / /

28 | / / /

C.   **The Verified Complaint Should Be Dismissed on** *Forum Non Conveniens* **Grounds, Or In The Alternative, Transferred**

The doctrine of *forum non conveniens* also requires that the Verified Complaint be dismissed. A case may be dismissed on *forum non conveniens* grounds if: 1) there is an adequate alternative forum and 2) the balance of private and public interest factors favors dismissal. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429, 127 S. Ct. 1184, 1190 (2007). Even if jurisdiction and proper venue are established, a court still may dismiss the action for *forum non conveniens*. *See American Dredging Co. v. Miller*, 510 U.S. 443, 448, 114 S. Ct. 981 (1994).

In determining whether a suit should be dismissed on grounds of *forum non conveniens*, the private interest factors to be considered include: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Fortaner v. Boeing Co.*, 504 F. App'x 573, 580 (9th Cir. 2013). The public interest factors to be considered include: (1) local interest of [the] lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Fortaner*, 504 F. App'x at 581. As discussed below, each factor weighs in favor of dismissal in this case, or in the alternative, transfer to the United States District Court for the Central District of California.

Here, California affords a suitable forum, as evidenced by the Plaintiff's initial California Federal Action and the ongoing California Family Law Action. Further, both private and public factors favor California as the forum with the greater interest in this litigation. The public interest factors discussed in Section III(B)(1), supra, each weigh in favor of dismissal or transfer. The court in the California Family Law Action is well-suited and familiar with resolving the issues of this action. Again, there is no need for this action to continue and burden this Court when the only connection to the state of Nevada is its original incorporation.

1    In terms of the private factors, Defendant resides in Los Angeles, California with her son,

2    and Defendant has strong business affiliations in Los Angeles, California. Neither party resides in

3    the state of Nevada. Moreover, the vast majority of the allegations relate to events that occurred in

4    California. The single connection to Nevada is that Dream Marriage Group, Inc. is incorporated

5    here.

6    "Perhaps the most important private interest is access to evidence." *Ford v. Brown*, 319

7    F.3d 1302, 1308 (11th Cir. 2003). There is no evidence pertinent to this action in Nevada.  As the

8    California family law court noted in its tentative ruling reiterating its jurisdiction, the Company

9    maintains at least 26 corporate bank accounts in California. *See* RJN Exhibit 6. The bulk of

10   evidence, witnesses, such as the company's employees, or other sources of proof are all located in

11   California. Again, given the California family law court's broad jurisdictional authority and the

12   issues presented in both cases, strong public policy suggests that California is the more appropriate

13   forum.

14   Plaintiff's Verified Complaint should be dismissed on *forum non conveniens* grounds, or in

15   the alternative, transferred to the United States District Court for the Central District of California.

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

III.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court dismiss or, in the alternative, stay Plaintiff's Verified Complaint on abstention grounds; or, dismiss Plaintiff's Verified Complaint or, in the alternative, transfer to the United States District Court for the Central District of California on grounds of *forum non conveniens*.

DATED this 5th day of December, 2013.

**WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP**

By:   */s/ Bradley Schrager, Esq.*
Bradley Schrager, Esq.
Nevada State Bar No. 10217
Daniel Bravo, Esq.
Nevada State Bar No. 13078
WOLF, RIFKIN, SHAPIRO,
SCHULMAN & RABKIN, LLP
3556 E. Russell Road, 2nd Floor
Las Vegas, Nevada 89120-2234

*Attorney for Defendant Anastasia Popova*

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that I am an employee of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP,

3  and that on the 5th day of December, 2013, I served a true and correct copy of the foregoing

4  MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY ON GROUNDS OF

5  ABSTENTION, OR, IN THE ALTERNATIVE, TO TRANSFER ON GROUNDS OF *FORUM*

6  *NON CONVENIENS* upon all counsel of record by electronically serving the document using the

7  Court's electronic filing system.

8

9                                         By   */s/ Michael J. Hannon*

                                               Michael J. Hannon, an Employee of
10                                              WOLF, RIFKIN, SHAPIRO, SCHULMAN &
                                               RABKIN, LLP
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

1  Bradley Schrager, Esq.
   Nevada State Bar No. 10217
2  Daniel Bravo, Esq.
   Nevada State Bar No. 13078
3  WOLF, RIFKIN, SHAPIRO,
4  SCHULMAN & RABKIN, LLP
   3556 E. Russell Road, 2nd Floor
5  Las Vegas, Nevada 89120-2234
   Telephone: (702) 341-5200/Fax: (702) 341-5300
6  Email: bschrager@wrslawyers.com

7  *Attorney for Defendant Anastasia Popova*

8

9                  **UNITED STATES DISTRICT COURT**

10                        **DISTRICT OF NEVADA**

11

12  ILIA N. ZAVIALOV, in the right of and for          Case No: 2:13-cv-02090-JAD-VCF
    the benefit of DREAM MARRIAGE GROUP,
13  INC.,

14        Plaintiff,

15        vs.

16
    ANASTASIA POPOVA, DOES 1 through
17  50, Inclusive,

18        Defendants,

19  -and-

20
    DREAM MARRIAGE GROUP, INC.,
21
          Nominal Party.
22

23

24         DECLARATION OF ZACHARY J. FRUCHTENGARTEN

25         I, Zachary J. Fruchtengarten, under penalty of perjury, declare as follows:

26         Our office was retained to represent Anastasia Popova in response to Ilia Zavialov's filing

27  of a Petition for Dissolution of Marriage, in Clark County, Washington on October 18, 2013.

28  There was already a pending Dissolution of Marriage action previously filed by Ms. Popova on

1  approximately September 6, 2013 in Los Angeles County, California and Mr. Zaviolov was served
2  well prior to his filing in Washington.  Mr. Zavialov alleged in his filing in Washington that
3  Ms. Popova was temporarily living in California and that Washington was the home state of the
4  parties' child.

5       On Friday, November 7, 2013 I sent correspondence to Mr. Zavialov's Washington
6  counsel, Howard Marshack notifying him that I had been retained to represent Ms. Popova, and
7  that I was filing a limited appearance in this matter to contest subject matter jurisdiction, personal
8  jurisdiction and UCCJEA jurisdiction in Washington.  I requested that he provide advance notice
9  if he planned to present any orders to the Washington Court.

10      On November 8, 2013, I received correspondence from Mr. Marshack along with a
11  Motion/Declaration for Ex-Parte Restraining Order and for Order to Show Cause-Financial
12  Matters.  He intended on presenting the order to the court on Tuesday, November 12, 2013 at 1
13  p.m. at the Clark County Courthouse.

14      The order itself would have restrained Ms. Popova as an individual or as an officer,
15  shareholder, director in the capacity of Dream Marriage, Inc. from transferring, assigning, selling,
16  spending, disbursing, removing, encumbering, concealing or disposing of any property except for
17  the necessities of life and requiring each party to notify the other of any expenditure in excess of
18  $2,500 made after the order.  There were many other provisions in the order which included
19  prohibiting Ms. Popova from removing documents, bills, papers, personal property, and
20  restraining her from interfering with "business matters."

21      We appeared at ex parte on Tuesday November 12, 2013 in front of Clark County
22  Commissioner Jennifer Snider.  Ex-parte is an informal proceeding and it was not on the record.  I
23  informed the court that prior to Mr. Zavialov filing in Washington, a Petition for Dissolution of
24  Marriage had been filed in California and served and that there was a hearing for December 3,
25  2013 to address whether it would keep jurisdiction as Mr. Zaviolov was contesting jurisdiction.

26      My main argument was that until California released jurisdiction, Washington had no
27  ability to order any relief and lacked subject matter jurisdiction.  I also made the court aware of
28  our other jurisdictional arguments.  Commissioner Snider agreed with me and refused to sign the

1   order that was presented by Mr. Zavialov's counsel.  She recognized that Washington had no

2   jurisdiction to sign any orders until California had made a decision on jurisdiction.  She urged the

3   parties to try to enter into some orders in California to address the allegations made by Mr.

4   Zavialov in his declaration since that was the appropriate jurisdiction at that time.  Since that court

5   appearance, I have had no correspondence or communication with Mr. Zavialov's Washington

6   attorney on this matter.

7         Dated this 4th Day of December, 2013.

8

9                            Zachary J. Fruchtengarten

10