EXHIBIT 6

Popova v Zavaialov (BD588375)

MATTER: MOTION TO QUASH PETITION FOR DISSOLUTION

MOVING PAPERS:
The California court does not have in rem jurisdiction to adjudicate the parties' dissolution as both parties are domiciled in Washington State, are in California only so that their son can receive medical treatment, and they lack the requisite intent to remain in California. Neither Petitioner nor Respondent own any property in California. Rather, they own residences in Washington State, where Respondent's primary residence is located. Petitioner and Respondent are registered to vote in Washington (and not in California), hold driver's licenses in Washington (but not California), and file taxes in Washington (and not in California). The parties' community business is domiciled in Nevada. The bank accounts that the parties have in California are merely for the purposes of managing their "away from home" expenses.

Merely residing in a state for an extended period of time is insufficient to establish domicile. *In re Marriage of Leff* (1972) 25 Cal.App.3d 630.

### Declaration of Respondent Ilia Zavialov

– Petitioner and Respondent were married in Vancouver, Washington. From 2003-July, 2011, I lived in Washington, where we both paid taxes, owned property, and were registered to vote. During that period, Petitioner lived primarily in Texas, and we had no ties to California.

– It was only after our son and only child, Andre Zaviolav, was born on July 17, 2011, that we first considered temporarily residing in California. As a newborn, Andre suffered from seizure-related medical complications which required and still require advanced and intensive treatment. As a result of his medical condition, we agreed that it would be in his best interest to receive medical treatment at the University of California, Los Angeles, which boasts the most accomplished and credentialed doctors and state of the art equipment. As such, we temporarily relocated to California, where we each rent separate apartments.

None of our ties to Washington have been extinguished during our temporary stay in California: (1) we do not own any property in California, but we own two residences and a parcel of land in Washington; (2) prior to our temporary stay in California, Petitioner and I opened bank accounts at Bank of America in Washington and I opened accounts in California to facilitate our temporary stay here, for the purpose of having access to funds for living expenses; (3) Petitioner and I are registered to vote in Washington; (4) since 2008 Petitioner has had a Washington State driver's license; neither of us has a California driver's license; both of our cars are currently registered in Washington, and neither of us has a car registered in California; (5) Petitioner and I file our taxes in Washington; (6) Petitioner and I rent separate apartments in California, but once our son's medical condition is regulated we will terminate those tenancies and return to Vancouver, Washington. Our most valuable community asset, Dream Marriage Group, Inc., is headquartered in Nevada.

I am currently in the process of initiating a dissolution proceeding in Washington.

C:\DOCUME~1\LBANKS\LOCALS~1\TEMP\XPGRPWISE\POPOVA V ZAVIALOV.DOC

OPPOSITION:
The Court has subject matter jurisdiction over this dissolution action, and the res of the marriage. Family Code 2320 requires that only one person needs to be a resident of California for the six months prior to the filing of the petition for dissolution. Petitioner has been a resident of Los Angeles since May, 2011.
The Court has jurisdiction over the parties. Respondent has been personally served with process in this state, and he makes no allegations to the contrary.

Both parties are domiciled in California. Respondent resided in California from May, 2011 through at least September, 2013, when he was personally served at the parties' Malibu residence.

The fact that the parties do not file taxes in California is not determinative of jurisdiction. *Penn Mut. Life Ins. Co. V. Fields* (Cent. Dist. Cal.1948) 81 F.Supp. 54, 57.
Respondent has sufficient minimum contacts with the State of California to support personal jurisdiction.
California is the most convenient forum.

### *Declaration of Anastasia Popova*

– I reside in Playa Vista and plan to remain in California for me permanent residence. When I filed for dissolution, I had been a continuous resident of this state for more than two years.

– During our marriage, Respondent traveled frequently for business and non-business, but resided with me here in California.

– I am not a resident of Washington State and have never been.

– After I served Respondent with the Summons and Petition for Dissolution in Malibu, he filed lawsuits against me. On October 16, 2013, I was served with a shareholder derivative action in the Nevada District Court; in paragraph 2 of that pleading, Respondent alleges that I live in Playa Vista, California. Also in October, 2013, I was served with a summons and complaint in the Central District of California; on page two of that pleading, Respondent alleges that I am a resident of Los Angeles.

– Respondent and I married on May 1, 2003, in Virginia, not Washington State. From 2005-2008, we lived together in Los Angeles, and during this time opened our primary bank accounts.

– In 2008, Respondent and I discussed relocating to Washington. During a trip there I obtained a driver's license. However, I remained in California with my daughter from a prior relationship so that she could finish her school year at John Adams Middle School in Santa Monica. My daughter Jenny Osipova, is now 19. In the summer of 2009, I moved to Texas with my daughter. I did not like Washington and did not want to live there. I continued to live in Texas until I moved back to California in 2011, during the course of my pregnancy.

– In June, 2011, Respondent and I relocated to Beverly Hills. The lease was from May, 2011 through April, 2012. After that we moved to Malibu. We resided together in Malibu until I moved out in August, 2013. Respondent continued to reside at our Malibu residence

C:\DOCUME~1\LBANKS\LOCALS~1\TEMP\XPGRPWISE\POPOVA V ZAVIALOV.DOC

after that time and was served with the summons and petition there. The rent was paid by our busines.

– At four months of age our son was diagnosed with Pyridoxine Dependent Seizures, a seizure disorder. Since his diagnosis I have arranged and attended all of his doctor appointments and obtained services for him in California. During pregnancy, there was no pre-diagnosis. Respondent's claim that we relocated here temporarily because of our son's condition is incorrect; we moved here before he was born. Andre is eligible for special services through the State of California, for which I make all the arrangements.

– After we married in 2003, Respondent and I started our business, which is currently called Dream Marriage Group, Inc. It is an online dating service which specializes in arranging connections with women in Russia. The principal place of business in Beverly Hill. In addition, Respondent signed a lease for a local apartment space for our business, located at 406 N. Palm Drive, Beverly Hills. As recently as June, 2013, Respondent and I signed a lease contract for an apartment in Playa Vista. Our current office is located on Wilshire Boulevard in Beverly Hills; we opened this office in May, 2010. Our business consists of numerous business entities and includes many bank accounts; Respondent and I have more than 26 bank accounts in the State of California for our business dealings. We also have 3 personal bank accounts in California.

– Respondent identifies a number of real properties that we purchased during our marriage outside the State of California. Respondent represented to me that they were investment properties. As a result of the success of our business, Respondent and I purchased property in Texas, Nevada, Wyoming and Washington. In Texas we purchased office buildings, duplexes and other property.

– In June, 2013, I discovered that Respondent had a relationship with a woman named Olga Gorban, which resulted in a child being born on June 10, 2011. I subsequently learned that Respondent fathered a child with a woman named Katerina, and that child was born on July 9, 2012. Based on statements Respondent has made to me, I understand that these other children Respondent fathered during our marriage also reside in the State of California with their other parent.

– Respondent's declaration states that he lived in Washington from 2003-2011. I disagree. Respondent lived in Texas from 1998-2003, and he moved to Virginia in 2003 to be with me. We were married in Virginia in 2003, and lived there until 2004 when we relocated to California. We resided in California until 2008, at which time I moved to Texas, where I lived until I returned to California.

– Respondent incorrectly states that my car is registered in Washington; it is registered in Nevada.

– I have never lived in the State of Washington and I have no intention of moving there. I intend to continue to reside in Los Angeles with our son, indefinitely.

REPLY:
– Petitioner conflates the critical distinction between domicile and residence and reaches the wrong conclusion that residence is sufficient for purposes of establishing *in rem* jurisdiction.

– Petitioner's Response provides insufficient evidence to demonstrate that she is domiciled in California. Her self-serving declaration that she intends to remain in California is

inconsistent with all of her contacts outside of the State of California.

– Petitioner's discussion of forum non conveniens and personal jurisdiction have no bearing on this motion.

INTENDED RULING:
Deny

REASONING:

To adjudicate a dissolution action, a court must have jurisdiction: (1) subject matter jurisdiction (Family Code §2010);(2) *in rem* jurisdiction over the *res* of the marriage; and (3) personal jurisdiction over the parties. *Muckle v. Superior* (2002) 102 Cal.App.4th 218, 225. This motion challenges the second of these three requirements.

Marriage is an *in rem* proceeding, and for the Court to have jurisdiction to dissolve a marriage there must be an existing marriage located in California. *Marriage of Ziereberg* (1992) 11 Cal.App.4th 1436, 1444-1445. The location of the *res* of a marriage is determined by the domicile of either spouse. "Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few commanding problems in the field of domestic relations with which the state must deal. Thus it is plain that each state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent." *Williams v. State of North Carolina* (1942) 317 U.S. 287, 298-299. The bona fide residence of one spouse in a state is sufficient to give that state power to grant a divorce. *Marriage of Gray* (1998) 204 Cal.App.3d 1239, 1250.

Domicile is determined by presence within the state along with the intent to remain indefinitely. *Smith v. Smith* (1955) 45 Cal.2d 235, 239. Courts consider several factors as indicia of domicile: home ownership/current residence; bank accounts; voter registration; driver's license and car registration; club, church and political memberships; tax filings/returns; mail receipt; business affiliations. *Marriage of Leff* (1972) 25 Cal.App.3d 630; *Marriage of Tucker* (1991) 226 Cal.App.3d 1249.

Respondent has conceded in other court filings that Petitioner resides in Los Angeles at the present time. It is his contention, however, that Petitioner's true domicile is in Washington State, a place he contends she will return to at some future date when their son's medical condition has stabilized. There is some evidence to support Respondent's argument that Petitioner is domiciled in Washington State (Petitioner's driver's license and voter registration), but it is outweighed by other evidence demonstrating that she is not domiciled there.

"[T]he place where a man lives is properly taken to be his domicile until facts adduced

establish the contrary. And, while to establish such intent, the acts and declarations of a person may be considered, a mere floating intention to return at some future period to a former place of abode is not enough to overcome residence in fact." *Penn Mut. Life Ins. Co. v. Fields* (Cent. Dist. Cal. 1948) 81 F.Supp. 54, 57.

Based on the evidence presented, it is apparent that Petitioner resides in Los Angeles, although she does not own any real property here. Petitioner (and Respondent) have numerous bank accounts in Los Angeles. Petitioner (and Respondent) have strong business affiliations in Los Angeles. Petitioner is *not*, registered to vote in California, does not have a California driver's license, and does she not have vehicles licensed within this state. Nonetheless, based on her residence here, her business affiliation here, and her stated continuous and present intention to continue residing here for the indefinite future, Petitioner has made a sufficient showing that she is domiciled here.